| | |
|---|---|
| THE NORTH CAROLINA GROWERS' ASSOCIATION, INC., ) ) Plaintiff, ) ) v. ) ) HILDA L. SOLIS, U.S. DEPARTMENT OF LABOR, ) MAS LABOR, MAS-H2A, K-T LABOR, AWMA, L.L.C., and ) ANDREW JACKSON, ) ) Defendants. ) ) | COMPLAINT |

The Plaintiff North Carolina Growers' Association, Inc. ("NCGA"), complaining of the Defendants, alleges and states as follows:

1. This is an action for a declaratory judgment, brought pursuant to 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure. NCGA seeks a judgment from this Court determining whether *Temporary Agricultural Employment of H-2A Aliens in the United States; Final Rule*, 75 Fed. Reg. 6884 (February 12, 2010) ("the H-2A Rule"), allows employers of workers under the federal H-2A program to require the H-2A workers to pay "processing fees," "paperwork fees," or other similar fees in lieu of unlawful "recruitment fees." NCGA further seeks a judgment from this Court determining whether the H-2A Rule allows employers of workers under the federal H-2A program to file a single "blanket application" for H-2A workers to cover an entire season rather than filing separate applications throughout the season based on date of need of the workers. NCGA further seeks a judgment from this Court determining whether NCGA may be required to conduct telephone interviews of all U.S. applicants for farm

labor positions while other employers of H-2A workers and their agents are allowed to have U.S. applicants "pre-screened" by the applicable state unemployment agency and/or to accept applications only during restricted hours. Finally, NCGA seeks a judgment from this Court determining whether H-2A employers are required, until 50 percent of the applicable contract period has passed, to offer jobs to any and all qualified U.S. applicants as long as they also employ at least one H-2A worker.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331, as this action arises under the laws of the United States.

3. Venue is proper in the Middle District of North Carolina because NCGA is a North Carolina corporation with its principal place of business is located in the Middle District of North Carolina. 28 U.S.C. §1391(e)(3).

## PARTIES

4. Plaintiff the North Carolina Growers' Association, Inc. ("NCGA") is a non-profit growers' association based in Vass, Moore County, North Carolina. NCGA is the nation's largest provider of H-2A workers, providing approximately 7,500 workers per year to approximately 700 farmers. NCGA is a North Carolina corporation.

5. Defendant Hilda L. Solis ("Solis") is Secretary of the U.S. Department of Labor ("DOL"). The Secretary of Labor is responsible for all functions of the DOL, including administration of the H-2A program. Solis is sued in her official capacity, pursuant to 5 U.S.C. §703.

6. Defendant DOL is responsible for administration of the H-2A program.

7. Defendants MASLabor and MAS-H2A are for-profit Virginia corporations with their principal places of business in Lovingston, Virginia. Defendant MAS-H2A is a subsidiary of Defendant MASLabor. MASLabor and MAS-H2A are providers of H-2A workers, and do business in the State of North Carolina. They are brought into this action as required parties pursuant to Rule 19(a)(1)(B)(i) in that they have an interest in the subject of this action and are so situated that disposing of the action in their absence may as a practical matter impair or impede their ability to protect their interests.

8. Defendant Kentucky-Tennessee Labor Corporation ("K-T"), upon information and belief, is a for-profit, unincorporated growers' agent based in Lexington, Kentucky. K-T is a provider of H-2A workers to farmers in the states of Kentucky and Tennessee, and solicits business in the state of North Carolina. K-T is brought into this action as a required party pursuant to Rule 19(a)(1)(B)(i) in that it has an interest in the subject of this action and is so situated that disposing of the action in its absence may as a practical matter impair or impede its ability to protect its interests.

9. Defendant Agriculture Workforce Management Association, Inc. ("AWMA"), is a non-profit corporation organized under the laws of the State of Kentucky with its principal place of business in Lexington, Kentucky. AWMA is a provider of H-2A workers to farmers in the states of Kentucky and Tennessee, and solicits business in the state of North Carolina. AWMA is brought into this action as a required party pursuant to Rule 19(a)(1)(B)(i) in that it has an interest in the subject of this action and is so situated that disposing of the action in its absence may as a practical matter impair or impede its ability to protect its interests.

10. Defendant Andrew Jackson ("Jackson") is an attorney practicing in Clinton, Sampson County, North Carolina, and is a citizen and resident of Sampson County, North

3

Carolina. Among other aspects of his law practice, Jackson assists farmers in applying for workers under the H-2A program. Jackson is brought into this action as a required party pursuant to Rule 19(a)(1)(B)(i) in that he has an interest in the subject of this action and is so situated that disposing of the action in his absence may as a practical matter impair or impede his ability to protect his interests.

**FACTUAL ALLEGATIONS**

11. The H-2A program provides a legal means by which agricultural employers can obtain the temporary services of foreign agricultural workers when U.S. workers are unavailable. The H-2A program was instituted in 1987 after the enactment of the Immigration Reform and Control Act ("IRCA") amendments to the Immigration and Nationality Act, 8 U.S.C. §1101, *et seq.* ("INA"). The name "H-2A" comes from the statutory provision that creates the program, 8 U.S.C. §1101(a)(15)(H)(ii)(a). The purpose of the program is to provide non-immigrant alien labor for agricultural concerns ("farmers") in the United States. Under the program, farmers must apply to the DOL (as well as Department of Homeland Security and the State Department) and be approved to hire H-2A workers. The farmers must meet a number of stringent regulatory requirements regarding the wages paid, reimbursing or furnishing of certain transportation expenses, furnishing of housing, and the like. All of these terms are set forth in a contract (Agricultural and Food Processing Clearance Order, or "Clearance Order") that must be approved by DOL and is provided to the H-2A worker. The H-2A program was not designed to replace U.S. farm workers with H-2A workers: as a prelude to hiring an H-2A worker, farmers must make concrete efforts to find qualified U.S. workers and, among other requirements, offer a specified wage that is designed to ensure that U.S. workers' wages are not adversely affected by the use of H-2A workers (typically by paying the "Adverse Effect Wage Rate" ("AEWR")).

Before an employer can proceed to hire H-2A workers, the DOL must first certify that there are insufficient U.S. workers available and that the employer's use of H-2A workers will not adversely affect the wages and working conditions of similarly situated U.S. workers. *See* 8 U.S.C. § 1188(a)(1)(A), (B). The H-2A program also guarantees to workers employment contracts, certain benefits including free housing, and other rights. For the farmers, the H-2A program creates access to legally authorized employees for their farms and provides some stability and security to the employment relationship.

12. Since 2008, there have been several successive regulatory regimes in place governing the employment of H-2A workers. Although they have differed in some respects, they have consistently prohibited H-2A employers or their agents from requiring a "recruitment fee" from the workers. Since at least 2007, the DOL has purported to take the position that H-2A employers or their agents may not file a "blanket application" for H-2A workers to cover an entire season, rather than filing applications as workers are needed. At all times relevant to the Complaint, NCGA has complied with these requirements.

13. Moreover, during calendar year 2011, the DOL and the State Workforce Agencies ("SWAs") have instructed NCGA to receive all inquiries about employment by U.S. workers directly from the applicants and to conduct a brief telephone interview of each applicant before determining whether the applicant may continue with the application process. This process requires substantial administrative time and manpower from NCGA. A more efficient process, with lower administrative cost to NCGA, would be to allow the North Carolina Employment Service to conduct the initial screening of applicants before sending minimally qualified applicants to NCGA.

**Recruitment/Processing Fees**

14. The H-2A Rule issued by the U.S. Department of Homeland Security ("DHS"), which has been in effect since January 18, 2009, contains the following provisions regarding recruitment and other fees (see 73 Fed. Reg. 16244):

> 8 C.F.R. Part 214.2(xi). *Treatment of petitions and alien beneficiaries upon a determination that fees were collected from alien beneficiaries.* (A) Denial or revocation of petition. As a condition of approval of an H-2A petition, no job placement fee or other compensation (either direct or indirect) may be collected at any time, including before or after the filing or approval of the petition, from a beneficiary of an H-2A petition by a petitioner, agent, facilitator, recruiter, or similar employment service as a condition of H-2A employment (other than the lesser of the fair market value or actual costs of transportation and any government-mandated passport, visa, or inspection fees, to the extent that the payment of such costs and fees by the beneficiary is not prohibited by statute or Department of Labor regulations, unless the employer agent, facilitator, recruiter or employment service has agreed with the alien to pay such costs and fees).
>
> (1) If [the U.S. Citizenship and Immigration Services ("USCIS")] determines that the petitioner has collected, or entered into an agreement to collect, such prohibited fee or compensation, the H-2A petition will be denied or revoked on notice unless the petitioner demonstrates that, prior to the filing of the petition, the petitioner has reimbursed the alien in full for such fees or compensation, or, where such fee or compensation has not yet been paid by the alien worker, that the agreement has been terminated.
>
> (2) If USCIS determines that the petitioner knew or should have known at the time of filing the petition that the beneficiary has paid or agreed to pay any facilitator, recruiter, or similar employment service such fees or compensation as a condition of obtaining the H-2A employment, the H-2A petition will be denied or revoked on notice unless the petitioner demonstrates that, prior to the filing of the petition, the petitioner has reimbursed the alien in full for such fees or compensation, or, where such fee or compensation has not yet been paid by the alien worker, that the agreement has been terminated.
>
> (3) If USCIS determines that the beneficiary paid the petitioner such fees or compensation as a condition of obtaining the H-2A employment after the filing of the H-2A petition, the petition will be denied or revoked on notice.
>
> (4) If USCIS determines that the beneficiary has paid or agreed to pay any facilitator, recruiter, or similar employment service such fees or compensation as a condition of obtaining the H-2A employment after the filing of the H-2A petition and with the knowledge of the petitioner, the petition will be denied or

6

revoked unless the petitioner demonstrates that the petitioner or facilitator, recruiter, or similar employment service has reimbursed the beneficiary in full or where such fee or compensation has not yet been paid by the alien worker, that the agreement has been terminated, or notifies DHS within 2 workdays of obtaining knowledge in a manner specified in a notice published in the **Federal Register**.

14. The DOL Rule governing H-2A workers that was in effect from January 17, 2009, through March 11, 2010, at 20 C.F.R. Part 655.105, required that employers "attest as part of the *Application for Temporary Employment Certification* that [they would] abide by the following conditions of this subpart":

> (o) The employer and its agents have not sought or received payment of any kind from the employee for any activity related to obtaining labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs. For purposes of this paragraph, payment includes, but is not limited to, monetary payments, wage concessions (including deductions from wages, salary, or benefits), kickbacks, bribes, tributes, in kind payments, and free labor. This provision does not prohibit employers or their agents from receiving reimbursement for costs that are the responsibility of the worker, such as government required passport or visa fees.
>
> (p) The employer has contractually forbidden any foreign labor contractor or recruiter whom the employer engages in international recruitment of H-2A workers to seek or receive payments from prospective employees, except as provided for in DHS regulations at 8 CFR 214.2(h)(5)(xi)(A).

15. Similarly, the H-2A Rule, at 20 C.F.R. Part 655.135, requires that employers "agree as part of the *Application for Temporary Employment Certification* and job offer that [they] will abide by the requirements of this subpart and make each of the following additional assurances":

> (j) *Comply with the prohibition against employees paying fees.* The employer and its agents have not sought or received payment of any kind from any employee subject to 8 U.S.C. 1188 for any activity related to obtaining H-2A labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs. For purposes of this paragraph, payment includes, but is not limited to, monetary payments, wage concessions (including deductions from wages, salary, or benefits), kickbacks, bribes, tributes, in kind

7

payments, and free labor. This provision does not prohibit employers or their agents from receiving reimbursement for costs that are the responsibility and primarily for the benefit of the worker, such as government-required passport fees.

16. Upon information and belief, MASLabor, MAS H-2A, and K-T, and Jackson's agent in Mexico with Jackson's knowledge, have charged "processing fees" to H-2A workers in the years 2009, 2010, and 2011. The charging to workers of a "processing fee" allowed MASLabor, MAS H-2A, K-T, AWMA, and Jackson to offer H-2A services to farmers at a lower cost than NCGA is able to offer, because NCGA does not require workers to pay such a fee.

17. NCGA has requested clarification from the DOL regarding this practice since 2008, and receives either no response or a terse instruction to read the regulation. Meanwhile, other H-2A processors have obtained and are continuing to obtain an unfair competitive advantage over NCGA by charging "processing fees" with the knowledge of the DOL, which has failed to either enforce the regulations as written or to provide authoritative clarification that the other processors' practices are lawful. NCGA seeks a declaration from the Court that it is lawful to charge "processing fees," as MASLabor, MAS H-2A, K-T, AWMA, and Jackson have done. In the alternative, NCGA seeks a declaration from the Court that "processing fees" are an unlawful functional equivalent to "recruitment fees" and cannot be charged by any H-2A employer or agent, including but not limited to MASLabor, MAS H-2A, K-T, AWMA, and Jackson.

**Blanket H-2A Applications**

18. The H-2A Rule defines "Date of Need" as "The first date the employer requires the services of H-2A workers as indicated in the *Application for Temporary Employment Certification*." *See* 20 CFR 655.103(b). "Job Offer" is defined as "The offer made by an

8

employer or potential employer of H-2A workers to both U.S. and H-2A workers describing all the material terms and conditions of employment, including those relating to wages, working conditions, and other benefits." *Id*. Beginning with the date that the H-2A workers "depart for the place of work" until 50 percent of the time period set forth in the Application for Temporary Employment Certification has elapsed, "the employer must provide employment to any qualified, eligible U.S. worker who applies to the employer." 20 CFR 655.135(d) ("the 50 percent rule"). The "departure" date is generally deemed to be "the third day preceding the employer's first date of need." 20 CFR 655.135(c).

19. Before filing its Application for Temporary Employment Certification, the employer or its agent must file a Job Order with the relevant State Workforce Agency ("SWA"). "The employer must submit this job order *no more than* 75 calendar days and no less than 60 calendar days before the date of need." 20 CFR 655.121(a)(1) (emphasis added). The SWA must keep the job order on file for the recruitment period and "must refer each U.S. worker who applies." 20 CFR 655.121(d). When the Job Order is filed, the SWA and the employer or its agent are required to undertake "positive recruitment" efforts to find U.S. workers for the positions. 20 CFR Part 655.150, *et seq*. This requires at minimum posting the positions, advertising with precisely specified contents, and attempting to make contact with all U.S. workers who worked for the employer in the previous year (with limited exceptions). *Id.* This "positive recruitment" obligation lasts until the date that the H-2A workers depart for the employer's place of work, generally deemed to be three days before the first date of need. 20 CFR Part 655.158. The employer is required to "guarantee to offer the worker employment for a total number of work hours equal to at least three-fourths of the workdays of the total period beginning with the first workday after the arrival of the worker at the place of employment or the

9

advertised contractual first date of need, whichever is later, and ending on the expiration date specified in the work contract or in its extensions, if any." 20 CFR 655.129(i)(1) ("the three-fourths guarantee").

20. Upon information and belief, in 2010 and 2011, MAS Labor, MAS H-2A, K-T, AWMA, and Jackson filed one "blanket" application for each of their clients, for all H-2A workers, each season at the beginning of the calendar year, with a stated "date of need" that was no more than 75 and no less than 60 days after the date of application. Upon information and belief, many of the H-2A workers were and are not actually needed and were and are not even brought into the United States until well after the "date of need" listed on the DOL 790-9142 form – in some cases, months after ("actual date of need").

21. NCGA, on the other hand, complies with the 75/60-day time frame set forth in the regulations and provides a stated date of need that is the same as its actual date of need. Using actual dates of need normally requires NCGA to file multiple H-2A applications in a given season because normally the number of workers needed depends on the time of year (for example, a tobacco farmer in North Carolina might need two workers to plant in February-March, four additional workers to cultivate during the spring, and six additional workers for harvest from mid-summer to autumn).

22. MAS Labor, MAS H-2A, K-T, AWMA, and Jackson obtain a competitive advantage over NCGA in ways that include, but are not limited to, the following:

(a) The positive recruitment obligations, which normally terminate three days before the date of need, are decreased for these employers because all their workers have an early stated date of need;

(b) The period during which the "50-percent rule" applies, which normally starts three calendar days before the date of need, terminates early because these employers' stated date of need is earlier than the actual date of need;

(c) Because these employers leave their H-2A workers in Mexico until they are actually needed, they do not violate the three-fourths' guarantee, which does not apply until "the first workday after the arrival of the worker at the place of employment" if it is later than the date of need;

(d) These employers save application, certification, and petition fees; advertising costs; cost associated with testing the labor market at the actual date of need; and other related costs by filing only one, rather than multiple, applications;

(e) The H-2A workers recruited by these employers are processed through the applicable embassies more quickly because the workers who are not needed until after the stated date of need have already been approved in advance.

23. NCGA has requested clarification from the DOL regarding "blanket" applications, and receives either no response or a terse statement that the law prohibits "blanket" applications. The only exception is that in 2008 NCGA was notified that it must file multiple applications. Meanwhile, other H-2A processors have obtained and are continuing to obtain an unfair competitive advantage over NCGA by filing "blanket" applications with the knowledge of the DOL, which has failed to either enforce the regulations as written or to provide authoritative clarification that the other processors' practices are lawful. NCGA seeks a declaration from this Court that it is lawful for all H-2A employers or their agents to file "blanket" applications as MASLabor, MAS H-2A, K-T, AWMA, and Jackson have done.

11

**Screening of U.S. Applicants**

24. NCGA has been instructed by the SWA and the DOL that all U.S. applicants for farm labor positions must be allowed to call NCGA directly. NCGA is required to conduct a short verbal interview of each of these applicants before making a hiring decision. NCGA is required to be available to accept referrals from 9 a.m. to 4 p.m. Monday through Thursday, and from 9 a.m. to 2 p.m. on Fridays.

25. Upon information and belief, some or all of the necessary parties are permitted to accept pre-screened referrals from the applicable SWA, or permitted to require applicants to fax their applications for pre-screening before a telephone interview is required, or permitted to receive applications during more-limited hours.

26. NCGA has requested clarification from the SWA and the DOL regarding referrals of U.S. applicants. Meanwhile, other H-2A processors have obtained and are continuing to obtain an unfair competitive advantage over NCGA by being subject to more-limited administrative requirements related to the processing of U.S. applicants, with the knowledge of the SWA and the DOL, which have failed to either enforce the law uniformly or to provide authoritative clarification that the other processors' practices are lawful. NCGA seeks a declaration from this Court that it is not unlawful for any H-2A employer or its agent to allow U.S. applicants to be pre-screened through the applicable unemployment agency or by requiring submission of a written application before an interview is conducted. In the alternative, NCGA seeks a declaration from this Court that all U.S. applicants must be initially screened through a telephone interview by all H-2A employers or their agents, including but not limited to MASLabor, MAS H-2A, K-T, AWMA, and Jackson.

### Accepting All U.S. Applicants

27. The current DOL has informed the SWA that its enforcement position is that an H-2A employer must accept any and all qualified U.S. applicants, up to the 50-percent point of the applicable contract period, as long as the employer is employing any H-2A workers. Thus, an employer of a single H-2A worker could be required to hire an unlimited number of U.S. applicants until the 50-percent point of the applicable contract period.

28. The enforcement position of the current DOL as set forth herein is unreasonable, arbitrary, capricious, and not in accordance with the statutory language.

29. The enforcement position of the current DOL gives MASLabor, MAS H-2A, K-T, AWMA, and Jackson an unfair competitive advantage over NCGA because their use of blanket applications, as set forth in Paragraphs 18-23, allows their H-2A employers to reach the 50-percent point of the season earlier than NCGA, which has multiple contract periods in a given season.

### FIRST CAUSE OF ACTION

**Violation of the Administrative Procedure Act,
5 U.S.C. §§553 and 701,** *et seq.*

30. NCGA incorporates by reference the allegations of Paragraphs 1-29 of the Complaint as if fully set forth herein.

31. The actual or constructive selective enforcement positions of the DOL, as set forth herein, violate the Administrative Procedure Act in that they are arbitrary and capricious, and contrary to law. *See* 5 U.S.C. §706(2)(A), (C), and (E).

## SECOND CAUSE OF ACTION

### Violation of the Administrative Procedure Act,
### 5 U.S.C. §701, *et seq.*

32. NCGA incorporates by reference the allegations of Paragraphs 1-31 of the Complaint as if fully set forth herein.

33. The enforcement position of the DOL with respect to accepting all U.S. applicants, as set forth in Paragraphs 27-29 of the Complaint, is not based on a reasonable interpretation of the H-2A statute or the H-2A Rule and therefore is not worthy of deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed.2d 694 (1984), or *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 2d 124 (1944).

34. The enforcement position of the current DOL with respect to accepting all U.S. applicants, as set forth in Paragraphs 27-29 of the Complaint, exceeds the DOL's authority and violates the Administrative Procedure Act, 5 U.S.C. §706(2)(A), (C), and (E), and should be set aside as contrary to law.

### PRAYER FOR RELIEF

Plaintiff NCGA hereby prays the Court for the following relief:

1) That the Court declare whether it is lawful for an H-2A employer or its agent to charge a "processing fee" to the workers;

2) That the Court declare whether it is lawful for an H-2A employer or its agent to file a single "blanket" application for H-2A workers at the beginning of the season, even though many of the positions will not be available until more than 75 days after the stated "date of need";

3) That the Court declare whether it is lawful for an H-2A employer or its agent to require that U.S. applicants successfully complete a pre-screening process before an interview is required;

4) That the Court declare whether an H-2A employer must accept any and all U.S. applicants, until the 50-percent point of the contract period is reached, so long as the employer has at least one H-2A worker; and

5) That the Court award NCGA its costs in pursuing this action, including reasonable attorneys' fees; and

6) That the Court award NCGA such other relief as it may deem just and proper.

This the 11th day of March, 2011.

       /s/ W. R. Loftis, Jr.
W. R. Loftis, Jr.
N.C. State Bar No. 2774
rloftis@constangy.com
CONSTANGY, BROOKS & SMITH, LLP
100 N. Cherry St., Suite 300
Winston-Salem, NC 27101
Telephone: 336-721-1001
Facsimile: 336-748-9112

15